et al., Oral Argument, 15 minutes per side. Mr. Moore for the appellate. Good morning, Your Honors. Very briefly, I'll go through the facts in the case or whatever. Bailey was stopped on September 24, 2011 by Officer Lorenz for various reasons. One being expired tags, driving the wrong way down a, they allege, divided highway, but it's really a street with just a little boulevard 100 feet long. Mr. Bailey was asked to take field sobriety tests, which at first he refused, but then he did. Officer Lorenz claimed Bailey had nystagmus and was off balance while instructions were given. He acknowledged Bailey passed the one leg stand and the walk and turn test. Notably, Lorenz has consistently changed his story about whether, how strong of odor of intoxicants Mr. Bailey had, whether they were strong, moderate, or something else. Mr. Bailey refused to take a preliminary breath test, which is his right, and was arrested. While in the police vehicle, Mr. Bailey was offered a chemical test, which he initially refused unless he spoke to an attorney, but then he clarified which test that they were going to give him. Once Lorenz told Bailey that it would be the test at the jail, Bailey consented, and that was some 38 seconds later. All of that is on the video that I presume the court has. He argued with Lorenz for a couple of minutes that he should be allowed to take the test. Lorenz refused, but he remained at the scene for almost 10 minutes before taking Bailey to the hospital for a blood draw. Lorenz then filed an affidavit for search warrant to draw blood, which had some errors and discrepancies in it, and blood was later taken. Multiple charges were issued, including operating under the influence of liquor, driving on the wrong side of a divided highway, expired plates, no insurance. We eliminated the criminal things. The OUI charge was dismissed. Driving on the wrong side of a divided highway was dismissed because the signage was improper. There was no signage. In fact, the entrance to the driveway Mr. Bailey left on is the only driveway on the street that drives into the boulevard. Other than that, there is not this divide. It's like a 100-foot-long strip of trees they decided to put down in the middle of the road. And the only driveway they left exposed that ran into this was this one driveway on the entire section of road they rebuilt. Mr. Bailey paid tickets for expired plates, no insurance, and careless driving. The claims on appeal still are that the arrest was wrongful, illegal search and seizure of the blood, illegal seizure of his driver's license, violation of due process, license suspension, malicious prosecution on the OUI, malicious prosecution for the license suspension, and injunctive relief. In the motion for summary judgment in the district court, Lorenz did not even argue at summary judgment the illegal seizure of his license or the violation of due process for the license suspension or the malicious prosecution of license suspension. The errors we believe that the district court did in its opinion and order, they appear to create new duties under a Franks hearing challenging Warts that a criminal defendant or civil plaintiff must also defend against new probable cause that the officer or judge wants to add to the warrant. As she was examining the warrant, she created a new affidavit because she admitted that the exculpatory evidence that was left out by Lorenz, i.e. that he consented to take the chemical test, that he passed the walk and stand, that he passed the balance test or whatever were all left off. The court further ignored inconsistencies by Lorenz as to his orders of intoxicants and actually claimed that Lorenz clarified his two statements that contradicted each other and that his last statement matched the video which in fact it didn't. The court granted summary judgments on due process, malicious prosecution for license suspension and illegal seizure of license claims despite Lorenz never having argued them or pled them in their motion for summary judgment. The judge in her opinion said that Lorenz raised absolute immunity as to his testimony in the SOS hearing but in fact when you read the transcript of the case, Lorenz never raised it. Absolute immunity came from the judge. She's the one who brought it up and in fact Lorenz's attorney at the time kept arguing qualified immunity and not absolute immunity and the judge kept going back to absolute immunity. Mr. Bailey has been denied the right to respond to that or was not given notice of absolute immunity was going to even be an issue until the day of the hearing. It was not pled as an affirmative defense. It was not mentioned in the motion for summary judgment and if a judge is going to sui sponte, add a new claim for summary judgment or whatever, we are entitled to reasonable notice and an opportunity to respond which we did not get. Did you respond here? We responded here in the appeal. No, we just said that we did not. I don't believe we responded in our brief. Is there an answer? Is there an absolute meaning? Well, the answer we would raise is that Lorenz may be entitled to absolute immunity for that testimony but based upon Wendrow recently decided and whatever that he may have waived it up through summary judgment because he failed to raise it until then and it could still be raised as in the Wendrow case they said it could still be raised at trial. But up until the point that it gets brought up, they waived the right to claim it prior to that point. The court made numerous conclusions of facts on probable cause and argued totality of the circumstances, another argument that Lorenz didn't argue. We also had a problem with the court where we were questioning whether the officer had training in the stigmas which is the eye test of whatever. He was asked in his deposition if he ever received any training at the academy and that he said no. He was asked if he ever received any other specific training, he said no. He was asked if he and he finally testified that he got standard sobriety training. He never implied that that included the stigmas testing and in fact the city of Howell's own training manual under sobriety tests and whatever does not even bring up the stigmas as a training element for them to do with new officers. Yet the court inferred and implied that, oh he must have had it in that standard sobriety training. In a motion for summary judgment as we all know, implications or whatever is supposed to be in our favor, not in theirs. And the inferences that the court drew throughout our opinion was in favor of the defendant whose motion it was rather than for us. We believe that there was numerous facts that could have been and should have been left to the jury. The judge... You take out all the stuff that wasn't true, you put in all the stuff that's favorable to you. Are you talking on the search warrant, Your Honor? Right. Okay. And put in all the stuff that's true to you. If you read the judge's opinion... Okay. Take out the stuff that she shouldn't have put back in. Just put in the stuff that's favorable to you. Okay. For probable cause. Okay. But the two questions on probable cause though, if the two factors he would have for probable cause would have been odor of intoxicants and the stigmas. And the driving. And the driving on the side of that road which was mismarked and everything else. Now, if... Oh, the driving that was contained in the... It was like 50 feet long because... Wait. It wasn't in the warrant. That's true. It wasn't what? That wasn't in the warrant. No. No, that wasn't in the warrant. Okay. But she wanted to add that to the warrant. No, no. Okay. So it's... So if you get down to what would have been in there, you'd have the stigmas, the smell of alcohol. The smell of alcohol is not enough. I don't think so, Your Honor. Oh, and, well, he was leaving a restaurant at 2 o'clock. Was driving. Hm? Was driving. And then when he was stopped, there was the smell of alcohol. That's not enough? I don't believe so, Your Honor. Because there's a lot of reasons for smell of alcohol. You know what I mean? Besides that... It doesn't have to be... It can be whatever. That's why... But I don't believe... You have a test afterwards. Yeah. You may have spilled a bottle. And the test actually he passed, you know, is from the standard of intoxication. That's why the charges were dropped. But just... Are you saying that the... The charges are... I believe it takes more than one item, i.e., the smell of alcohol, to get a warrant to draw someone's blood. Especially after he consented to take the chemical test, which was also left out of the warrant affidavit. After initially declining to do it. Yeah. Within 38 seconds when he clarified the test, he agreed to take it. And the administrative law judge flat out ruled you should have given him the test. Which the judge just kind of brushed over that. The administrative law judge made that ruling in the Secretary of State. You want us to say that there's no probable cause to arrest for driving while intoxicated if the policeman, for whatever reason that's not at issue, stops a person and then can smell alcohol on his breath? Alcohol alone, to me, is not sufficient probable cause to arrest. No, I don't believe so. Does it exist to say that? Because that seems like a strong rule. Well, again, you have to combine that with all the circumstances. A, he agreed to take a chemical test. And then they went and got the blood test. But you're saying they can arrest. It's equivocal whether he agreed. I mean, it wasn't like, sure, test me. Well, I don't know about you, Your Honor, but A, I've never been arrested for drunk driving. B, this is the first time Mr. Bailey has ever been pulled over for it. He's not had experience in the back of a police car. He's not had experience with the procedures they go through. So when you look at that totality or whatever, what's the common man or the average person going to do? And whether it's reasonable or not, in this civil case, isn't it really a fact for the jury to decide? Not the judge? If you're saying that it's police who pull someone over and they smell alcohol on the breath of the person, that they can't arrest them, it just seems like a pretty strong rule. Well, Your Honor, when I first got out of law school, I served as magistrate in the same district court. And I got some of these drunk driving things. And I could read you every drunk driving report. It's like a format. I could just tell you what they would say. We followed the vehicle that weaved within its lane. It took a long time to pull over. It fumbled for its paperwork. Subject's eyes were bloodshot. Speech was slurred. I mean, it was just like they mimeographed them from case to case. And if he doesn't have the misdemeanors... What he's doing is the same from case to case. Well, I'm hoping it's not that routine, Your Honor. And if I, and I used to sign search warrants for the three years I did this part-time. And had somebody told me that they consented to take the test and was still calling me for a search warrant at 2 in the morning, I can tell you what my reaction would have been. Why are you waking me up? Why else is there a consent to search exception? If you give the consent, which he did, administrative law judge agreed that he did. Of course, you're talking about the consent to take the chemical case? Yes. Which he consented to only after he found out it wasn't, that he was going to be taken somewhere else. Well, he found out that it wasn't the PBT on the road because PBTs have been known to be somewhat unreliable, and they aren't, well, they're just becoming admissible in Michigan court, but they weren't now. I mean, they've just changed the law this last six months. And once he found out it wasn't the breath test at the scene, he said he would take the test at the station. Okay. It says my time's up, but anything else? Good morning, Your Honors. Karen Daly on behalf of Officer Lorenz. I think this case is pretty clear. There's clearly probable cause to arrest. Not only did he smell of alcohol, he drove the wrong way down a highway. But that wasn't in the affidavit? But this is challenging just the arrest, not the search warrant. I'm referring just to the arrest right now. The officer saw him drive the wrong way. What's the point of a field sobriety test? I mean, he's having a conversation with the guy. His speech isn't slurred. He does smell alcohol. Smelling alcohol means you drank. It doesn't mean you're driving while intoxicated. So he asks him out of the car, and he asks him to do field sobriety tests, and he does fine. Well, he first refused the field sobriety tests. Then he agreed. After some back and forth, the officer said, look, you have a chance to go home tonight if you do these tests. Otherwise, you're going to jail. So he said, okay, I'll do the tests. He failed the nystagmus test. Except we don't know if he's qualified to give it. Well, I would disagree with that. Because he said he was trained in standardized sobriety testing. The national standards and the Michigan standards for standard sobriety testing includes three sobriety tests, the nystagmus, the walk and turn, and the one-leg stand. That's standard. That's what standard sobriety testing is. What about the manual that doesn't include that? Well, the manual isn't the standard. He said that he received the standard sobriety testing, which is through MCOLs and the national standard. So that's used everywhere. The standards are in the record? What, that he received standard sobriety testing? The standards are in the record? Yes, yes. Well, you could take judicial notice of that. But the standards in the record? It's cited in our brief from the national website. Brief below or brief here? You know what, I'm not sure. I'm not sure. But could he have done a better job of explaining his training? Sure. But he implied that when he said standard sobriety testing, he implied that he was trained. Did he say that? What's the stage of all of this? In his deposition. He was asked. After the fact. Right. He was asked if he had received any training in nystagmus, and he said, I've received standard sobriety training, which, I mean. Well, it would have been better if he had said, yes, I received it. Sure. It would have been better. The fact that he didn't say yes or no, it doesn't mean, I don't know. He's telling them. But I think there's a reasonable inference that that includes. Let's go back as to what. You're talking about probable cause to believe that somebody is driving impaired. Correct. Or under the influence. So what. The smell of alcohol, do you think that's enough? Absolutely. He admitted, plus he admitted to drinking. It's not that he said, I was at the bar and I had a drink spelled on me, that's why you can smell alcohol. He smelled the alcohol when, and you've got to remember. Excuse me. Are you saying that if you stop a car for anything, I mean a taillight, anything, and the person has, you can smell alcohol, there's nothing else, okay, and you say to the person, have you been drinking, and the person said, yes, officer, I had a glass of wine. And then you ask the person to get out and they walk fine and they're fine with their alphabet, forward, backward, whatever, that you can nevertheless arrest the person for driving under. But remember, this case is different. He wasn't pulled over for a broken taillight. He was pulled over because he pulled out of a bar at 2 a.m., driving the wrong way on a highway. And I have to take issue with what counsel said, that that's the reason the criminal charges were dropped. There is absolutely no evidence that there was improper signage here. None whatsoever. So he drove out of a bar at 2 10 a.m., driving the wrong way on a highway. When he pulled over, the cop asked him to roll down his window. He immediately smelled alcohol. His eyes were bloodshot and watery. He said, how much have you had to drink tonight? He said, well, I've had a drink. He asked him to get out of the car. He says no. And then he says, I need you to get out of the car. Or maybe he didn't say no, he asked why. He said, I need you to get out of the car. I'm going to do some field sobriety tests. He says, no, I'm not doing any field sobriety tests. There's the exchange between them that he says, look, you might. . . The whole thing was being very cordial. You could tell he was suspicious. He doesn't have to confirm that he was drunk. He has to have a reasonable suspicion that he was drunk. He talked to him. You can see in the video, he spends a long time doing the eye test. He even tells the cop afterwards, the other cop, you can hear on the tape, he says, were his eyes messed up? And he says, yeah. So in his mind, he had the messed up eyes. He had the bloodshot, watery eyes. He had the admission to drinking. Let me interrupt briefly so I understand what you're arguing. Are you arguing with respect to sufficient evidence for a warrant now? No, I'm still referencing just the arrest. As far as the warrant goes, it's the same thing. There are cases that say a warrant doesn't have to be perfect. They don't have to include every single item in the warrant. They have to include enough to give the judge the option to sign the warrant or not. With respect to the arrest, we can take into account that he was driving the wrong way on the street. Correct. And that he had a smell. And more. But it seems like you might argue that that was enough.  I still think there was sufficient for the warrant. Because, mind you, if you add in the omissions, there's nothing that says you don't add in the omissions of the officer too. You can't add in more exculpatory evidence. Well, yeah, but he could have. Okay, that's what the judge did, but you can't do that. He could have put that stuff in about the bloodshot eyes. These warrants are forms. A lot of times they check boxes. Did he pass the sobriety? No. Yes. And the judge bases it on that. He has to do enough to get the judge to sign the warrant. And also, under the chemical test statute in Michigan, it does not have to be a breath test. So the fact that he claims he consented, he didn't even need a warrant. Because under the chemical test, it can be urine, blood, or breath. It does not specify which one. Are you saying he didn't need a warrant? I'm saying, no, he got a warrant because it was his understanding that he refused the test. But if you were to say he didn't refuse the test, he still wouldn't have needed a warrant because he consented to the test. I'm sorry. Are you saying that he did not need the warrant to draw the blood? If he would have consented to the test, no. Which test? The chemical test. Under the statute, a chemical test can be a test of urine, blood, or breath. It doesn't have to be a breathalyzer. Okay. So are you saying that if the officer had listened to him where he said, oh, it's the one that's back at the station, yes, I'll take that test. And if he turned the car around, he could have taken him to the station and stuck a needle in his arm without a warrant? He could have had his blood drawn if he consented to the chemical test. Can you answer my question? Yes. If he consented to the chemical test, then, yes, he could have done that. It has to be done by a nurse or a doctor, so he would have had to take him to the hospital. Okay. So if somebody says, yes, I will take the chemical test, just without knowing which chemical test it is, then they can go ahead and just draw the blood? As long as he consents. If he refuses a blood test, then, yes, they would need a warrant. But he's saying he consented to the chemical test. Yes. I guess that's my point. I mean, the argument here is that he didn't consent. As far as the officer goes, the totality of the circumstances, Mr. Bailey had been uncooperative from the beginning. He didn't want to roll his window down. He didn't want to get out of the car. He originally – Do you have a warrant now? I'm talking, yes, I'm talking about the totality of the circumstances, why he had probable cause to believe that he had been driving while intoxicated. In order to get the warrant. In order to get the warrant. And we aren't limited to what's in the affidavit? I mean – Look, I don't disagree that the affidavit could have been more thorough here. Or honest. I don't believe it was dishonest. If you watch the video, there's a point where actually I watched the video and I said, wow, he was a little off balance there. Why wasn't that in the report? It was in the affidavit. He does what's necessary to get the affidavit. It's 3 o'clock in the morning. Like I said, could he have been more thorough? Sure. Is that a constitutional violation? No. Not where there was probable cause to issue the warrant. Counsel, the idea, you've said it several times, he did what was necessary to get the warrant. Okay? The notion that that's what his task is, or that you think that's what his task is, is a little distressing. His task is to give the judge the full story accurately. And then it's up to the judge to decide whether he gets the warrant. You don't do what's necessary to get the warrant. But you do what's necessary to show probable cause, not to show guilt or innocence. This is a lower standard. He's suspicious that this guy is drinking and driving, so he wants a warrant to get a test to confirm that. Generally, blood draw, forcible blood draw is the last resort. That's why you have other tests, other chemical tests. And that's why you let the person agree to it. So to tell a judge that this person refused the chemical test when the person, in fact, when they found out that it wasn't being given by this officer in the field and that it was going to be at the precinct and that there was going to be something objective about it, and they say, I'll do it, and not tell the judge that and just decide, well, you know, you missed your chance, your tiny little window, and I'm going to tell the judge you refused it. But again, I think you need to look at the totality of the circumstances here. With regard to the field sobriety, him refusing, him basically having to get talked into doing them, the PBT, he refused. And then so he said, okay, turn around, you're under arrest. He cuffed him. He said, wait, wait, wait, no, that's fine, that's fine, I'll do it. And then he said, well, wait, what are my options? So he refused, he agreed, then he refused again. He never agreed to do the PBT. So Officer Lawrence thought he was playing games. You refuse, fine, we'll take you to the hospital, we'll get a blood draw. You know, could he have given him the test? Maybe. Maybe he could have. Does it rise to a level of constitutional violation? I would say absolutely not. He had probable cause to arrest. He had probable cause to request the warrant. The warrant was based on probable cause. So with that, unless there's any other questions, I would ask that you affirm. Thank you. Your Honors, very briefly, Lawrence is still asking the court for an inference that the standard sobriety testing through the city is the same as NHTSA, only he did testify that he did not get an astigmas training at the academy, and he testified that he got his standard sobriety testing from Howell and their manual doesn't even list an astigmas as one of the subjects to cover. Again, he avoided that to no end. I believe that he has a duty to tell the judge everything when asking for a search warrant, especially to draw blood, and that would be the things that are good and the things that are bad, and that's what judges are supposed to do is make up their minds. And I think he had a duty to disclose all of this. In the court's deliberations or whatever, I'd like you to take notice of all the things that they're arguing on appeal, many of which were not even included in the motion for summary judgment. And I will admit with her that the state law does say that they can do one of three different tests for chemical testing, and I will say that my client specifically consented to take the breath test, not to have his blood drawn. He said, I will take the test at the station. Thank you. The case will be submitted. The rest of the cases being on the briefs, you can adjourn the court. Thank you.